## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

JASON LEE KONVALINKA,

          Petitioner,

vs.

UNITED STATES OF AMERICA,

          Respondent.

No. C11-3014-MWB
No. CR09-3041-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
PETITIONER'S § 2255 MOTION**

_____

## TABLE OF CONTENTS

I.    *INTRODUCTION AND BACKGROUND*.............................................. 2
    A.    *Criminal Case Proceedings* ............................................... 2
    B.    *The Petitioner's § 2255 Motion* ...................................... 5

II.   *LEGAL ANALYSIS* ............................................................... 6
    A.    *Standard For § 2255 Relief* ............................................ 6
    B.    *Procedural Matters* ......................................................... 8
        1.    *Preliminary matters* ........................................... 8
        2.    *Procedural default* .............................................. 9
    C.    *Ineffective Assistance Of Counsel* .................................... 9
        1.    *Applicable standards* .......................................... 9
            a.    *Strickland's "deficient performance" prong* ............... 11
            b.    *Strickland's "prejudice" prong* ............................. 14
        2.    *Failure to challenge crime of violence enhancement* .............. 14
            a.    *Section 2K2.1(a)(4)(A) enhancement* ........................ 14
            b.    *The performance prong*........................................ 16
            c.    *The prejudice prong* ........................................... 17
    D.    *Certificate Of Appealability* .................................................. 22

III.  *CONCLUSION* ................................................................. 23

# I. INTRODUCTION AND BACKGROUND

This case is before me on petitioner Jason Lee Konvalinka's Amended Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody. Konvalinka asserts that his counsel provided him with ineffective assistance in failing to object to the calculation of his base offense level in his presentence report ("PSR"). Konvalinka argues that he was not subject to the base offense level of 20, pursuant to U.S.S.G. § 2K2.1(a)(4)(A), because his conviction for third degree burglary of an unoccupied vehicle is not a qualifying crime of violence. The respondent denies that Konvalinka is entitled to relief on his claim.

## A. Criminal Case Proceedings

On November 19, 2009, Konvalinka was charged by a one-count Superseding Indictment with being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Konvalinka subsequently executed a written plea agreement with the prosecution. In his plea agreement, Konvalinka made certain factual and legal stipulations. Specifically, in pertinent part, the parties stipulated that the following United States Sentencing Guidelines should be applied:

> **Firearm Offense Level (Chapter 2)**: For Count 1, pursuant to U.S.S.G. § 2K2.1(a)(4)(A), the base offense level is at least 20 because the offense was committed subsequent to defendant's conviction from a crime of violence (burglary in 3rd degree).

Plea Agreement at ¶ 17(A).

On March 29, 2010, Konvalinka entered a plea of guilty to the charged offense pursuant to the terms of his plea agreement. A probation officer then prepared a PSR.

The PSR also indicated that Konvalinka's base offense level was 20, because he had a prior conviction for a crime of violence. PSR at ¶ 22. The probation officer increased Konvalinka's offense level four levels, pursuant to U.S.S.G. § 2K2.1(b)(1)(B), because the charged offense involved between 8 and 24 firearms. PSR at ¶ 23. The probation officer also increased Konvalinka's offense level two levels, pursuant to U.S.S.G. § 2K2.1(b)(4), because the charged offense involved a stolen firearm. PSR at ¶ 24. Konvalinka's offense level was further increased by four points, pursuant to U.S.S.G. § 2K2.1(b)(6), because he used or possessed a firearm or ammunition in connection with another felony offense. PSR at ¶ 25. The PSR also indicated that Konvalinka's offense level should be lowered by three levels, pursuant to U.S.S.G. §§ 3E1.1(a)-(b), for Konvalinka's acceptance of responsibility. PSR at ¶¶ 30-31. Thus, the PSR indicated that Konvalinka's total offense level was 27.

The PSR also indicated that Konvalinka had 21 criminal history points for his convictions for burglary in the third degree (1999), eluding/operating a vehicle while intoxicated (2004), driving while barred-habitual offender (2005), driving while barred-habitual offender (2005), theft in the second degree (2006), theft in the third degree (2007), burglary in the third degree (2007), possession of methamphetamine (2007), and driving while barred (2009).[1] PSR at ¶¶ 35-46. With respect to Konvalinka's burglary in the third degree conviction, the PSR states that: "Trial Information reflects on December 8, 1999, the defendant entered a vehicle without right, license or privilege to do so, with the intent to commit theft." PSR at ¶ 36. The probation officer also added two criminal history points, pursuant to U.S.S.G. § 4A1.1(d), because Konvalinka

_____

[1]Because his 2007 conviction for third degree burglary occurred after the conduct at issue in this case, is was not a qualifying crime of violence for the purposes of § 2K2.1(a)(4)(A).

committed the charged offense while he was on probation. PSR at ¶ 48. The probation officer also added one criminal history point, pursuant to U.S.S.G. § 4A1.1(e), because Konvalinka committed the charged offense less than two years since his release from custody.[2] PSR at ¶ 49. Thus, the PSR indicated that Konvalinka had a total of 24 criminal history points, which placed Konvalinka in criminal history category VI. PSR at ¶ 50.

Konvalinka appeared before me on July 30, 2010, for sentencing. I found that Konvalinka's base offense level was 20, because he had a prior conviction for a crime of violence. Neither Konvalinka nor his counsel objected to my base offense level determination. Following the probation officer's recommendation, I increased Konvalinka's offense level four levels, pursuant to U.S.S.G. § 2K2.1(b)(1)(B), because the charged offense involved between 8 and 24 firearms. PSR at ¶ 23. I also followed probation's recommendation to increase Konvalinka's offense level two levels, pursuant to U.S.S.G. § 2K2.1(b)(4), because the charged offense involved a stolen firearm. PSR at ¶ 24. I further followed probation's recommendation to increase Konvalinka's offense level four points, pursuant to U.S.S.G. § 2K2.1(b)(6), because he used or possessed a firearm or ammunition in connection with another felony offense. PSR at ¶ 25. I lowered Konvalinka's offense level three levels, pursuant to U.S.S.G. §§ 3E1.1(a)-(b), for his acceptance of responsibility. PSR at ¶¶ 30-31. Thus, I concluded that Konvalinka's total offense level was 27.

---

[2]Konvalinka's counsel objected to application of the one point for recency under U.S.S.G. § 4A1.1(e), because an amendment to that guideline section, which was to take effect November 1, 2010, eliminated the recency enhancement. I noted at sentencing that application of the criminal history adjustment for recency was a "moot question" because Konvalinka's criminal history placed him in criminal history category VI regardless of whether the recency adjustment was applied or not. Sent. Tr. at 3. Konvalinka conceded that the recency adjustment "makes absolutely no difference in this case." Sent. Tr. at 3.

Having found that Konvalinka's total offense level was 27 and he had a criminal history category of VI , I concluded that his advisory United States Sentencing Guideline range was 130 to 163 months. However, because the statutory maximum sentence was ten years imprisonment and Konvalinka received six months credit for time served on a related state conviction, I sentenced him to 114 months imprisonment, and three years of supervised release. Konvalinka did not appeal.

## B.    The Petitioner's § 2255 Motion

On April 15, 2011, Konvalinka filed a *pro se* Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody. In his motion, Konvalinka contended that his base offense level of 20, under U.S.S.G. § 2K2.1(a)(4)(A), for his violation of 18 U.S.C. §§ 922(g) and 924(a)(2), was incorrectly calculated based on his prior conviction for burglary of a car, which was not a requisite crime of violence. After respondent filed its answer, I set a briefing schedule and counsel was appointed to represent Konvalinka on the § 2255 motion. Konvalinka then sought, and was granted, three extensions of time in which to file his brief in support of his § 2255 motion. After Konvalinka filed his brief, respondent moved to dismiss Konvalinka's § 2255 motion. Respondent asserted that because Konvalinka did not raise his claim on appeal, the issue was procedurally barred. Respondent also argued that Konvalinka's claim was one for non-constitutional error in application of the sentencing guidelines, which respondent contended could not be raised as grounds for a § 2255 motion. Konvalinka resisted respondent's motion and filed a motion to amend his § 2255 motion, requesting that he be permitted to file an amended § 2255 motion which would clarify that his claim was one for ineffective assistance of counsel. I granted Konvalinka's motion to amend and he filed an amended § 2255 motion. I then denied respondent's motion to dismiss as being moot and set a new briefing schedule. Konvalinka filed an amended brief in support

of his amended § 2255. After obtaining an extension of time, respondent filed a timely response to Konvalinka's § 2255 amended motion. After Konvalinka filed his reply brief, respondent sought and was granted an extension of time to file a surreply brief. Respondent filed a timely surreply brief.

## II.    LEGAL ANALYSIS

### A.    Standard For § 2255 Relief

Section 2255 of Title 28 of the United States Code provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255; *see Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007) ("Under 28 U.S.C. § 2255 a defendant in federal custody may seek post conviction relief on the ground that his sentence was imposed in the absence of jurisdiction or in violation of the Constitution or laws of the United States, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."); *Bear Stops v. United States*, 339 F.3d 777, 781 (8th Cir. 2003) ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). Thus, a motion pursuant to § 2255 "is 'intended to afford federal prisoners a remedy identical in scope to federal Habeas corpus.'" *United States v. Wilson*, 997 F.2d 429, 431 (8th Cir. 1993) (quoting *Davis v. United States*, 417 U.S. 333, 343 (1974)); *accord Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (quoting *Wilson*).

One "well established principle" of § 2255 law is that "'[i]ssues raised and decided on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on 28 U.S.C. § 2255.'" *Theus v. United States*, 611 F.3d 441, 449 (8th Cir. 2010) (quoting *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001)); *Bear Stops*, 339 F.3d at 780. One exception to that principle arises when there is a "miscarriage of justice," although the Eighth Circuit Court of Appeals has "recognized such an exception only when petitioners have produced convincing new evidence of actual innocence," and the Supreme Court has not extended the exception beyond situations involving actual innocence. *Wiley*, 245 F.3d at 752 (citing cases, and also noting that "the Court has emphasized the narrowness of the exception and has expressed its desire that it remain 'rare' and available only in the 'extraordinary case.'" (citations omitted)). Just as § 2255 may not be used to relitigate issues raised and decided on direct appeal, it also ordinarily "is not available to correct errors which could have been raised at trial or on direct appeal." *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (per curiam). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in Habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal quotations and citations omitted).

"Cause and prejudice" to resuscitate a procedurally defaulted claim may include ineffective assistance of counsel, as defined by the *Strickland* test, discussed below. *Theus*, 611 F.3d at 449. Indeed, *Strickland* claims are not procedurally defaulted when brought for the first time pursuant to § 2255, because of the advantages of that form of proceeding for hearing such claims. *Massaro v. United States*, 538 U.S. 500 (2003). Otherwise, "[t]he Supreme Court recognized in *Bousley* that 'a claim that "is so novel that its legal basis is not reasonably available to counsel" may constitute cause for a procedural default.'" *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (quoting

*Bousley*, 523 U.S. at 622, with emphasis added, in turn quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). The "actual innocence" that may overcome either procedural default or allow relitigation of a claim that was raised and rejected on direct appeal is a demonstration "'that, in light of all the evidence, it is more likely than not that no reasonable juror would Have convicted [the petitioner].'" *Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) (quoting *Bousley*, 523 U.S. at 623); *see also House v. Bell*, 547 U.S. 518, 536-37 (2006). "'This is a strict standard; generally, a petitioner cannot show actual innocence where the evidence is sufficient to support a [conviction on the challenged offense].'" *Id.* (quoting *McNeal v. United States*, 249 F.3d 747, 749-50 (8th Cir. 2001)).

With these standards in mind, I turn to analysis of Konvalinka's claim for § 2255 relief.

### B.     Procedural Matters

#### 1.     Preliminary matters

Even though ineffective assistance of counsel claims may be raised on a § 2255 motion, because of the advantages of that form of proceeding for hearing such claims, *see Massaro v. United States*, 538 U.S. 500, 509, that does not mean that an evidentiary hearing is required for every ineffective assistance claim presented in a § 2255 motion. A district court may not "grant a prisoner § 2255 relief without resolving outstanding factual disputes against the government." *Grady v. United States*, 269 F.3d 913, 919 (8th Cir. 2001) (emphasis in original). Where a motion raises no disputed questions of fact, however, no hearing is required. *See United States v. Meyer*, 417 F.2d 1020, 1024 (8th Cir. 1969). In this case, I conclude that no evidentiary hearing is required on any issue because the motion and the record conclusively show that Konvalinka is entitled to no relief.

## 2. *Procedural default*

Section 2255 relief is not available to correct errors which could have been raised at trial or on direct appeal, absent a showing of cause and prejudice, or a showing that the alleged errors were fundamental defects resulting in a complete miscarriage of justice. *See Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993). "[C]ause and prejudice" to overcome such default may include "ineffective assistance of counsel." *See Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005). The Eighth Circuit Court of Appeals has expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings."). Because I construe Konvalinka's claim to be a claim of ineffective assistance of counsel, I will consider it on the merits.

## C. *Ineffective Assistance Of Counsel*

### 1. *Applicable standards*

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. Thus, a criminal defendant is constitutionally entitled to the effective assistance of counsel both at trial and on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Bear Stops*, 339 F.3d at 780; *see also Steele v United States*, 518 F.3d 986, 988 (8th Cir. 2008). The Eighth Circuit Court of Appeals has recognized that, if a defendant was denied the effective assistance of counsel guaranteed by the Sixth Amendment, "then his sentence was imposed 'in violation of the Constitution,' . . . and he is entitled to relief" pursuant to § 2255(a). *King v. United States*, 595 F.3d 844, 852 (8th Cir. 2010). Both the Supreme Court and

the Eighth Circuit Court of Appeals have expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal, because such a claim often involves facts outside of the original record. *See Massaro*, 538 U.S. at 504-05 (2003); *United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings.").

The Supreme Court has reiterated that "'the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation . . . [but] simply to ensure that criminal defendants receive a fair trial.'" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). That being the case, "'[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Id.* (quoting *Strickland*, 466 U.S. at 686, with emphasis added). To assess counsel's performance against this benchmark, the Supreme Court developed in *Strickland* a two-pronged test requiring the petitioner to show "both deficient performance by counsel and prejudice." *See Strickland*, 466 U.S. at 687-88, 697; *see also Knowles v. Mirzayance*, 556 U.S. 111, 129 S. Ct. 1411, 1419 (2009). "'Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.'" *Gianakos v. United States*, 560 F.3d 817, 821 (8th Cir. 2009) (quoting *Strickland*, 466 U.S. at 687).

Although the petitioner must prove both prongs of the *Strickland* analysis to prevail, the Supreme Court does not necessarily require consideration of *both* prongs of the *Strickland* analysis in every case, nor does it require that the prongs of the *Strickland* analysis be considered in a specific order. As the Court explained in *Strickland*,

Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, *there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.* In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Strickland*, 466 U.S. at 697 (emphasis added).[3]

I will consider the two prongs of the *Strickland* analysis in a little more detail, before analyzing Konvalinka's claim.

### a. *Strickland's "deficient performance" prong*

"The performance prong of *Strickland* requires a defendant to show '"that counsel's representation fell below an objective standard of reasonableness."'" *Lafler*,

---

[3] Although the Court in *Strickland* found that it was only necessary to consider the "prejudice" prong, so that it did not reach the "deficient performance" prong, the Eighth Circuit Court of Appeals has repeatedly held that it need not consider the "prejudice" prong, if it determines that there was no "deficient performance." *See, e.g., Gianakos v. United States*, 560 F.3d 817, 821 (8th Cir. 2009) ("'We need not inquire into the effectiveness of counsel, however, if we determine that no prejudice resulted from counsel's alleged deficiencies." (quoting *Hoon v. Iowa*, 313 F.3d 1058, 1061 (8th Cir. 2002), in turn citing *Strickland*, 466 U.S. at 697)); *Ringo v. Roper*, 472 F.3d 1001, 1008 (8th Cir. 2007) ("Because we believe that the Missouri Supreme Court did not unreasonably apply *Strickland* when it determined that counsel's decision not to call Dr. Draper fell within the wide range of reasonable professional assistance, we need not consider whether counsel's decision prejudiced Mr. Ringo's case."); *Osborne v. Purkett*, 411 F.3d 911, 918 (8th Cir. 2005) ("Because Osborne did not satisfy the performance test, we need not consider the prejudice test.").

132 S. Ct. at 1384 (quoting *Hill v. Lockart*, 474 U.S. 52, 57 (1985), in turn quoting *Strickland*, 466 U.S. at 688); *Richter*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 688). To put it another way, "[t]he challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Richter*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 687)).

In evaluating counsel's performance, the reviewing court must not overlook "'the constitutionally protected independence of counsel and . . . the wide latitude counsel must have in making tactical decisions.'" *Cullen*, 131 S. Ct. at 1406 (quoting *Strickland*, 466 U.S. at 589). Thus,

> [b]eyond the general requirement of reasonableness, "specific guidelines are not appropriate." [*Strickland*, 466 U.S.], at 688, 104 S. Ct. 2052. "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions ...." *Id.*, at 688–689, 104 S. Ct. 2052. *Strickland* itself rejected the notion that the same investigation will be required in every case. *Id.*, at 691, 104 S. Ct. 2052 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary" (emphasis added)). It is "[r]are" that constitutionally competent representation will require "any one technique or approach." *Richter*, 562 U.S., at ––––, 131 S. Ct., at 779.

*Cullen*, 131 S. Ct. at 1406-07.

The *Strickland* standard of granting latitude to counsel also requires that counsel's decisions must be reviewed in the context in which they were made, without "the distortions and imbalance that can inhere in a hindsight perspective." *Premo v. Moore*, 131 S. Ct. 733, 741 (2011); *see also id.* at 745 (reiterating that "hindsight cannot suffice for relief when counsel's choices were reasonable and legitimate based on predictions of

how the trial would proceed" (citing *Richter*, 131 S. Ct. 770)); *Rompilla v. Beard*, 545 U.S. 374, 381 (2005) ("In judging the defense's investigation, as in applying *Strickland* generally, hindsight is discounted by pegging adequacy to 'counsel's perspective at the time' investigative decisions are made, 466 U.S., at 689, 104 S. Ct. 2052, and by giving a 'heavy measure of deference to counsel's judgments,' *id.*, at 691, 104 S. Ct. 2052."). This is so, because "[u]nlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge," and because "[i]t is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.'" *Richter*, 131 S. Ct. at 788 (quoting *Strickland*, 466 U.S. at 689, and also citing *Bell v. Cone*, 535 U.S. 685, 702 (2002), and *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). In short, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.* (quoting *Strickland*, 466 U.S. at 690). Furthermore,

> *Strickland* specifically commands that a court "must indulge [the] strong presumption" that counsel "made all significant decisions in the exercise of reasonable professional judgment." 466 U.S., at 689–690, 104 S. Ct. 2052. The [reviewing court] [i]s required not simply to "give [the] attorneys the benefit of the doubt," but to affirmatively entertain the range of possible "reasons [trial] counsel may have had for proceeding as they did."

*Cullen*, 131 S. Ct. at 1407 (internal citations to the lower court opinion omitted); *Richter*, 131 S. Ct. at 787 ("A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range" of reasonable professional assistance.'" (quoting *Strickland*, 466 U.S. at 689)).

### b. Strickland's "prejudice" prong

"To establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler*, 132 S. Ct. at 1384 (quoting *Strickland*, 466 U.S. at 694). The Court has explained more specifically what a "reasonable probability" means:

> "A reasonable probability is a probability sufficient to undermine confidence in the outcome." [*Strickland*, 466 U.S. at 694]. That requires a "substantial," not just "conceivable," likelihood of a different result. *Richter*, 562 U.S., at ----, 131 S. Ct., at 791.

*Cullen*, 131 S. Ct. at 1403. Ultimately, a showing of "prejudice" requires counsel's errors to be "'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 131 S. Ct. at 787-88 (quoting *Strickland*, 466 U.S. at 687).

### 2. Failure to challenge crime of violence enhancement

### a. Section 2K2.1(a)(4)(A) enhancement

Konvalinka argues that his counsel provided him with ineffective assistance in failing to object to the calculation of his base offense level in his PSR at a level 20, under U.S.S.G. § 2K2.1(a)(4)(A), because his conviction for third degree burglary of an unoccupied vehicle is not a crime of violence. Respondent concedes that third degree burglary of an unoccupied vehicle is not a crime of violence, but contends that Konvalinka's conviction for eluding is a crime of violence that, nonetheless, qualified him for a base offense level of 20 under § 2K2.1(a)(4)(A).

The United States Sentencing Guidelines ascribe an enhanced base offense level of 20 to a defendant who "committed any part of the instant offense subsequent to sustaining one felony conviction of . . . a crime of violence." U.S.S.G. § 2K2.1(a)(4)(A). Section 4B1.2(a), in turn, defines a "crime of violence" as follows:

(a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). The application notes to § 4B1.2(a) further provide that

"Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another.

*Id.* § 4B1.2 cmt. n. 1.

The second clause of § 4B1.2(a)(2) is commonly referred to as the "otherwise" clause. *See, e.g., United States v. Williams*, 537 F.3d 969, 971-72 (8th Cir. 2008). In *Begay v. United States*, the United States Supreme Court analyzed the nearly identical "otherwise" clause in the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), and held that driving under the influence of alcohol was not a "violent felony."[4] *Begay*,

[4]Although this case involves the term "crime of violence" whereas *Begay* concerned interpretation of the term "violent felony," the Eighth Circuit Court of Appeals

553 U.S. 137, 148 (2008). The Court held that, for a prior felony offense to fall within the scope of the "otherwise" clause, such offense must (1) "pose a similar degree of risk of physical injury as the example crimes" and (2) "be similar in kind to the example crimes." *Williams*, 537 F.3d 969, 972 (citing *Begay*, 553 U.S. at 144-45). "For a crime to be similar in kind to the example crimes, it should typically involve 'purposeful, violent, and aggressive conduct.'" *Id.* (quoting *Begay*, 553 U.S. at 145).

### b. *The performance prong*

Konvalinka argues that his conviction for third degree burglary of an unoccupied vehicle under Iowa law is not a conviction for a crime of violence. Respondent does not contest Konvalinka's assertion. For good reason, federal courts have found that burglary of an unoccupied automobile and other similar offenses are not crimes of violence. *See United States v. Livingston*, 442 F.3d 1082, 1087 (8th Cir. 2006) (holding that breaking or entering a vehicle under Arkansas law is not a violent felony); *see also Shepard v. United States*, 544 U.S. 13, 16 (2005) (noting that [t]he [ACCA] makes burglary a violent felony only if committed in a building or enclosed space ("generic burglary"), not in a boat or motor vehicle."); *United States v. Williams*, 537 F.3d 969, 973-75 (8th Cir. 2008) (holding that auto theft by deception, auto theft without consent, and auto tampering under Missouri law were not crimes of violence); *United States v. Thornton*, 463 F.3d 693, (7th Cir. 2006) (noting that burglary involving entry into a car would not constitute a violent felony). As the Eighth Circuit Court of Appeals explained in *Livingston*:

> [B]reaking or entering a vehicle is one step removed from the dangers inherent in automobile theft and that breaking or entering a vehicle does not cross the line into what constitutes a violent felony . . . . Because the offense of breaking or

has "never recognized a distinction between the two. " *Williams*, 537 F.3d at 971; *see United States v. Sprouse*, 394 F.3d 578, 580 (8th Cir. 2005) ("Because the definitions of crime of violence and violent felony are identical, the same analysis applies in determining whether [the defendant's] convictions fall within the conduct defined.").

> entering a vehicle for the purpose of committing a theft does
> not require the offender to possess, much less operate, the
> vehicle, we believe it creates less danger of physical harm
> than vehicle theft, and subsequently the outcome of this case
> is not controlled by *Sun Bear*. We hold that breaking or
> entering a vehicle for purposes of committing a theft under
> Arkansas law is not a violent felony for purposes of the
> ACCA.

*Livingston*, 442 F.3d at 1087. Consequently, Konvalinka's counsel erred in not objecting to the reference in both the plea agreement, and the PSR, indicating that Konvalinka's conviction for third degree burglary of an unoccupied vehicle was a qualifying crime of violence. Thus, Konvalinka has satisfied the first prong of the *Strickland* analysis of his ineffective-assistance claim.

### c. *The prejudice prong*

Because I find that Konvalinka has satisfied the "deficient performance" prong of his ineffective-assistance claim, I must consider whether or not he can satisfy the "prejudice" prong. *See Strickland*, 466 U.S. at 687–88 & 694 (ineffective-assistance claims require proof of both "deficient performance" and "prejudice"). I find that Konvalinka cannot establish that he was prejudiced by his counsel's error. As I explained above, in order to establish prejudice under *Strickland*, Konvalinka "must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler*, 132 S. Ct. at 1384 (quoting *Strickland*, 466 U.S. at 694). Konvalinka's conviction for third degree burglary of an unoccupied vehicle was not his only felony conviction. Konvalinka was also convicted, in 2004, of eluding, in violation of Iowa Code § 321.279(3)(b), and operating a motor

vehicle while intoxicated, in violation of Iowa Code § 321J.2. [5]   Section 321.279(3)(b) defines eluding as:

> 3.      The driver of a motor vehicle commits a class "D" felony if the driver willfully fails to bring the motor vehicle to a stop or otherwise eludes or attempts to elude a marked official law enforcement vehicle that is driven by a uniformed peace officer after being given a visual and audible signal as provided in this section, and in doing so exceeds the speed limit by twenty-five miles per hour or more, and if any of the following occurs:
>
> . . . .
>
> b.      The driver is in violation of section 321J.2 or 124.401.

IOWA CODE § 321.279(3)(b).  The Eighth Circuit Court of Appeals has specifically held that eluding under this section is a crime of violence. *United States v. Malloy*, 614 F.3d 852, 866 (8th Cir. 2010) ("In sum, we hold that the offense of eluding under Iowa Code section 321.279(3) is a crime of violence for purposes of the Sentencing Guidelines, as it is 'roughly similar, in kind as well as in degree of risk posed,' to the example crimes in § 4B1.2(a)(2)."); *see United States v. Clay*, 622 F.3d 892, 895, 895 (8th Cir. 2010) (holding that eluding under Iowa Code § 321.279(2), a lesser included offense of eluding under § 321.279(3), "is a crime of violence for the same reasons we held in *Malloy* that section 321.279(3) is a crime of violence."); *see also United States v. Richardson*, 581

---

[5]At Konvalinka's sentencing, I noted that "I thought this case would be very appropriate for substantial upward departure . . . . then I realized, well, you can't depart upward because we're already at the statutory maximum penalty which is actually significantly below the high end of the advisory guideline range." Sentencing Tr. at 4. I pointed out that: "If it was in my discretion, I'd go substantially higher because 24 criminal history points for somebody who's 28 years old is beyond shocking. It's top 5 hall of shame in over 2,600 people that I've sentenced. To have that many criminal history points at such a young age is very disturbing." Sentencing Tr. at 4-5. Thus, even if Konvalinka had prevailed in proving that his counsel provided ineffective assistance of counsel, he may well have received the same sentence at resentencing.

F.3d 824, 825 (8th Cir. 2009) (Observing in case involving Kansas statute that "[o]ur holding that 'knowingly fleeing a police officer who is attempting to make an arrest is purposeful conduct that falls within the "otherwise involves" clause of § 4B1.2(a)(2)' is, therefore, directly applicable, and Richardson's prior conviction is for an offense that qualifies as a "crime of violence.'") (quoting *United States v. Hudson*, 577 F.3d 883, 884 (8th Cir. 2009)); *United States v. Kendrick*, 423 F.3d 803, 804 (8th Cir. 2005) ("Considering the combined risks associated with felony fleeing, we conclude that the district court properly held that [Oregon Revised Statute] § 811.540 is a crime of violence as defined by § 4B1.2.").

In *Malloy*, the court of appeals distinguished its prior holding in *United States v. Tyler*, 580 F.3d 722 (8th Cir. 2009) (holding that a Minnesota conviction for fleeing a peace officer in a motor vehicle was not a crime of violence for purposes of the career offender guideline enhancement), by discussing at length the differences between the Iowa eluding offense pursuant to Iowa Code § 321.279(3) and the Minnesota "fleeing" offense. *Malloy*, 614 F.3d at 864–65. Indeed, for many of the same reasons the Eighth Circuit Court of Appeals determined that the charge of eluding under § 321.279(3) was a crime of violence, the United States Supreme Court held that the offense of "vehicle flight" under Indiana law, is a violent felony for purposes of the ACCA. *Sykes v. United States*, 131 S. Ct. 2267, 2270 (2011). The Court explained why flight was a potentially violent crime:

> When a perpetrator defies a law enforcement command by fleeing in a car, the determination to elude capture makes a lack of concern for the safety of property and persons of pedestrians and other drivers an inherent part of the offense. Even if the criminal attempting to elude capture drives without going at full speed or going the wrong way, he creates the possibility that police will, in a legitimate and lawful manner, exceed or almost match his speed or use force to bring him within their custody. A perpetrator's indifference to these

collateral consequences has violent—even lethal—potential for others.  A criminal who takes flight and creates a risk of this dimension takes action similar in degree of danger to that involved in arson, which also entails intentional release of a destructive force dangerous to others.  This similarity is a beginning point in establishing that vehicle flight presents a serious potential risk of physical injury to another.

Another consideration is a comparison to the crime of burglary.  Burglary is dangerous because it can end in confrontation leading to violence.  The same is true of vehicle flight, but to an even greater degree.  The attempt to elude capture is a direct challenge to an officer's authority.  It is a provocative and dangerous act that dares, and in a typical case requires, the officer to give chase.  The felon's conduct gives the officer reason to believe that the defendant has something more serious than a traffic violation to hide.  In Sykes' case, officers pursued a man with two prior violent felony convictions and marijuana in his possession. In other cases officers may discover more about the violent potential of the fleeing suspect by running a check on the license plate or by recognizing the fugitive as a convicted felon.

Because an accepted way to restrain a driver who poses dangers to others is through seizure, officers pursuing fleeing drivers may deem themselves duty bound to escalate their response to ensure the felon is apprehended.  *Scott v. Harris* rejected the possibility that police could eliminate the danger from a vehicle flight by giving up the chase because the perpetrator "might have been just as likely to respond by continuing to drive recklessly as by slowing down and wiping his brow."  And once the pursued vehicle is stopped, it is sometimes necessary for officers to approach with guns drawn to effect arrest.  Confrontation with police is the expected result of vehicle flight.  It places property and persons at serious risk of injury.

Risk of violence is inherent to vehicle flight. Between the confrontations that initiate and terminate the incident, the intervening pursuit creates high risks of crashes. It presents more certain risk as a categorical matter than burglary. It is well known that when offenders use motor vehicles as their means of escape they create serious potential risks of physical injury to others. Flight from a law enforcement officer invites, even demands, pursuit. As that pursuit continues, the risk of an accident accumulates. And having chosen to flee, and thereby commit a crime, the perpetrator has all the more reason to seek to avoid capture.

Unlike burglaries, vehicle flights from an officer by definitional necessity occur when police are present, are flights in defiance of their instructions, and are effected with a vehicle that can be used in a way to cause serious potential risk of physical injury to another.

*Id.* at 2273–74 (citations omitted).

For the reasons outlined by the Supreme Court, I conclude that vehicle flight from a law enforcement officer poses risks of violence because a potentially dangerous confrontation between the person fleeing and law enforcement officers may result. Thus, I find that Konvalinka's eluding conviction was a qualifying crime of violence that required that he be ascribed the enhanced base offense level of 20 pursuant to U.S.S.G. § 2K2.1(a)(4)(A).[6] Accordingly, he has not shown that he was prejudiced because he

---

[6] In his reply brief, Konvalinka asserts that respondent is precluded from arguing that Konvalinka's eluding conviction qualifies as a predicate crime of violence for his sentence enhancement because the prosecution did not address the issue at sentencing. Konvalinka, however, has cited no authority holding that respondent is barred from asserting facts in the record in its defense to a § 2255 collateral attack on a criminal conviction, and I am aware of no such authority. The Eighth Circuit Court of Appeals requires that objections to the PSR be made "with 'specificity and clarity'" before a district court is precluded from relying on the factual statements contained in the PSR.

would have received the exact same sentence absent his counsel's error. *See Harrington v. Richter*, 131 S. Ct. 770, 792 (2011) (observing that to establish prejudice, "[t]here must be a substantial likelihood of a different result."). Since Konvalinka cannot demonstrate he was prejudiced by his counsel's error, his claim of ineffective assistance of counsel fails.

### D.     *Certificate Of Appealability*

Konvalinka must make a substantial showing of the denial of a constitutional right in order to be granted a certificate of appealability in this case. *See Miller-El v. Cockrell*, 537 U.S. 322 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Moreover, the United States Supreme Court reiterated in *Miller-El v. Cockrell* that "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). I determine that Konvalinka's motion does not present questions of substance for appellate review, and

---

See *United States v. Razo-Guerra*, 534 F.3d 970, 976 (8th Cir. 2008) (quoting *United States v. Wajda*, 1 F.3d 731, 732 (8th Cir. 1993) (internal quotation marks omitted). Konvalinka did not object to the portion of the PSR concerning his eluding conviction. Thus, he did not alert the prosecution about any specific facts it needed to substantiate at sentencing concerning his eluding conviction. I, therefore, am able to consider all of the specific factual allegations contained in paragraph 44 as true.

therefore, does not make the requisite showing to satisfy § 2253(c). *See* 28 U.S.C. § 2253(c)(2); FED. R. APP. P. 22(b). Accordingly, with respect to Konvalinka's claims, I do not grant a certificate of appealability pursuant to 28 U.S.C. § 2253(c). Should Konvalinka wish to seek further review of his petition, he may request a certificate of appealability from a judge of the United States Court of Appeals for the Eighth Circuit. *See Tiedman v. Benson*, 122 F.3d 518, 520-22 (8th Cir. 1997).

## III.   CONCLUSION

For the reasons discussed above, Konvalinka's Amended Motion Under 28 U.S.C. § 2255 is denied in its entirety. This case is dismissed. No certificate of appealability will issue for any claim or contention in this case.

**IT IS SO ORDERED**.

**DATED** this 16th day of April, 2014.

MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA